146

Devlin, Admr., Appellant, *v.* Piechoski, Appellant.

Argued November 18, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*George W. Alexander, Jr.,* with him *D. T. Spagnoletti* and *Walter E. Alessandroni,* for plaintiff.

*Thomas Raeburn White, Jr.,* with him *Thomas Raeburn White, Richard W. Hopkins* and *White, Williams & Scott,* for garnishee.

OPINION BY MR. JUSTICE MUSMANNO, January 4, 1955:

Rosella Devlin was killed when the airplane in which she was riding as the sole passenger crashed with the pilot Joseph Piechoski who had rented the plane from Ernest Buehl, insured for aircraft liability by the Indemnity Insurance Company of North America. Her father, James Devlin, administrator of the estate, brought survival and death actions against Joseph Piechoski who failed to enter an appearance or answer, whereupon the plaintiff obtained judgment in default and damages were later assessed in the amount of $21,474.16.

On September 27, 1951, the plaintiff began garnishment proceedings against the Indemnity Insurance Company of North America. Replying to the inter-

rogatories filed by the plaintiff, the insurance company produced a photographic copy of the policy which provided *inter alia*: "The unqualified word 'insured' wherever used in Coverages A, B, and C, and in other parts of this policy when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the aircraft is with the permission of the named insured."

The garnishee filed a plea of Nulla Bona, averring that it was without liability because the defendant had violated a provision of the policy to the effect that the airplane was not to be flown in violation of Federal Regulations for Civil Aviation applicable to minimum safe altitudes.

As the result of the trial which followed upon the issue raised by the garnishee's plea, the jury returned a verdict in favor of the plaintiff. The Trial Court ordered a new trial which order was affirmed by this Court (*Devlin v. Piechoski,* 374 Pa. 639).

At the second trial the garnishee refused liability because of an endorsement to the policy which provided that liability was excluded if *any insured* knowingly operated the aircraft in violation of Federal Regulations for Civil aviation applicable to minimum safe altitudes. The plaintiff denied that the endorsement in question was at all effective averring that it was not countersigned or dated. The endorsement carried the legend: "Not valid unless countersigned by a duly authorized agent of the Company."

At the first trial, only a specimen copy of the policy was introduced since the original policy could not be found. At the second trial, however, the garnishee produced the original copy, declaring it had been located

on a rubbish heap, Buehl having apparently thrown it away. The several sheets of the policy were in a somewhat deteriorated state. A question of fact arose as to whether the endorsement bore the countersignature and the effective date, both of which were absolutely necessary to make it valid and enforcible. The jury found that the endorsement was not countersigned and that no effective date appeared on the endorsement. Therefore, liability attached. The garnishee moved for judgment n.o.v. and for a new trial. The court below refused the motion for judgment n.o.v., but ordered a new trial. The garnishee has appealed to this Court from the refusal of the motion for judgment n.o.v., and the plaintiff has appealed from the order granting a new trial.

Whether the signature and the effective date appeared or did not appear on the exclusionary endorsement was a question of fact for the jury and we cannot say by a study of the record and an examination of the policy itself that the jury was not justified in reaching the conclusion it did. Judgment n.o.v. therefore cannot be allowed.

The lower court ordered a new trial on the basis that the plaintiff offered in evidence the specimen policy with endorsement attached, instead of the original policy itself. But it must be noted in this connection that P. F. Burke, Executive Vice-President of the garnishee company swore under oath in his answers to the interrogatories, in behalf of the insurance company, that the specimen policy which was attached to the answers (showing no countersignature) was a true and correct copy of the policy in full force and effect on the date of the accident. Though the Court later permitted this statement to be amended, the prior statement still remained admissible as an admission. In *Easton School District v. Continental Casualty Co.*,

304 Pa. 67, 72, we said: "That the statements in a superseded pleading may be used as evidence against the party by whom they were made is undoubted. We expressly so hold in Hess v. Vinton Colliery Co., 255 Pa. 78 . . .; while in 22 C.J., page 337, the rule is stated that, 'Although a pleading which has been withdrawn or stricken out or superseded by amendment is out of the case in its capacity as pleading, and the pleader is no longer concluded by it, statements therein may still be competent as admissions, when they are relevant to the issues in connection with which it is sought to introduce them.' "

Nor did the introduction of the specimen policy offend against the Best Evidence Rule. The original policy did not clearly reveal any countersignature, so that a question of fact arose with regard to this feature of the case. The admission in the Answers that the specimen policy (which carried no countersignature) was a true and correct copy of the policy in question was thus relevant and material to the factual issue, namely, Was there a countersignature on the original policy?

The original policy itself, as already stated, was not available at the first trial. At the second trial it was produced by the defendant. The garnishee also produced what it referred to as a "daily", being a carbon copy of the policy retained by the insurance company after the original policy was given to the insured. No one questions the authenticity of the original policy introduced by the defendant at the trial. Therefore, its evidentiary value is no less effective because it came into the case through the defendant rather than through the plaintiff. In the case of *Husvar v. Delaware L. & W. R. R. Co.*, 232 Pa. 278, 281, a similar question arose. There the plaintiff had failed, by the time he rested his case, to show that the defendant had

committed any negligence which would hold it responsible for the plaintiff's injuries. The Court would have been warranted at the end of the plaintiff's case in entering a compulsory nonsuit had it been asked for. The defendant, however, proceeded to introduce evidence with the object of showing that it was without negligence. The jury returned a verdict for the plaintiff and the lower court entered judgment n.o.v. on the ground that the plaintiff's case, standing alone, did not establish liability on the part of the defendant. This Court, in reversing the lower court, and entering judgment for the plaintiff on the verdict, stated that the vital evidence which established negligence was no less for the jury because it came from the defendant, instead of from the plaintiff: "The evidence was for their [the jury's] consideration whether it made for or against the party calling the witness. If it made for the plaintiff, it was entitled to quite as much weight as though it had been introduced by him. The prime object of a trial where the facts are disputed is to elicit the truth; that is what the jury is to seek after and find if they can upon a consideration of all the evidence submitted to them. Here the first question was, what caused the collapse in which plaintiff was injured? The fact that it was not discoverable from the testimony offered by plaintiff, did not prevent the jury from seeking for the cause in the evidence voluntarily offered by the defendant and submitted to them."

In *Northern Trust Co. v. Huber,* 274 Pa. 329, the question arose as to whether certain assets in the possession of the defendant constituted a gift or whether they had merely been placed in his possession for safe-keeping. When the plaintiff rested his case, a compulsory nonsuit would have been justified. The defendant moved for a nonsuit but it was refused. The defendant then presented evidence which benefited the

plaintiff. On appeal this Court held that such evidence was to be considered regardless of its origin: "Evidence was then offered by defendants to prove the transfers were voluntary, and the facts thus elicited are to be considered in passing upon the questions here involved, whether favorable to the one furnishing them, or to his adversary."

In *Silberstein v. Showell*, 267 Pa. 298, 304, we said: "A party is entitled to the benefit of all the affirmative facts helpful to his case, notwithstanding they may be adduced by his opponent's testimony."

In *Fabel v. Hazlett*, 157 Pa. Superior Ct. 416, 420, the Superior Court said: "Appellees (plaintiffs) are entitled to the benefit of all the affirmative facts helpful to their case, notwithstanding such facts may have been adduced by appellant's (defendant's) testimony."

The order of the lower court granting a new trial is reversed and Judgment is now entered for the plaintiff on the verdict.

The order refusing judgment n.o.v. is affirmed.

Mr. Justice JONES, Mr. Justice CHIDSEY and Mr. Justice ARNOLD dissent from the reversal of the order granting a new trial and entering judgment on the verdict.