397 A.2d 1238

**Theresa ROSATO and Nicholas Rosato, Wife and Husband, Appellants,**

v.

**NATIONWIDE INSURANCE CO. and Donald C. Daniel.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided Feb. 16, 1979.

342

Joseph F. Leeson, Bethlehem, for appellants.

Gary S. Figore, Easton, for appellees.

Before PRICE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

This trespass action arises as the result of an accident between a pedestrian and a motor vehicle in a residential neighborhood of Northampton County. The jury found both plaintiff and defendant negligent and hence verdict was entered for defendant. Plaintiff-pedestrian, and her hus-

band, took this appeal and allege various errors in the court's charge and in permitting certain testimony. We find appellants' arguments without merit and will therefore affirm.

The facts were not complicated. The accident occurred in Bangor Borough on Richmond Avenue, a two-lane residential blacktop street running east and west. The road is bounded on both sides by homes, appellants' being on the north side about mid-block at number 459. Two lots to the east of appellants' house, Richmond Avenue is intersected by Wall Street, also a two-lane road, running north and south. A few lots to the west of appellants' home, Richmond Avenue makes a very sharp curve to the right and becomes Miller Street.

November 26, 1974 was a clear, cold day. At approximately 3:00 P.M. one Betty Lane was driving appellant Theresa Rosato home from their place of employment. Mrs. Lane approached from the west, coming onto Richmond Avenue from Miller Street. She pulled onto the right (south) berm of Richmond, across the street from number 459, and Mrs. Rosato alighted from the passenger side. Mrs. Lane then drove east toward Wall Street, intending to turn left. She noticed coming toward her in the westbound lane appellee Donald C. Daniel, operating a car owned by his employer, appellee Nationwide Insurance Company. Daniel passed Mrs. Lane at approximately 40 m. p. h.

Mrs. Rosato, meanwhile, after leaving the Lane vehicle, began crossing the street to reach her home. When she was half way across, she noticed Daniel's vehicle bearing down on her. She took a few steps into the westbound lane, turned and faced the car with her purse held up, and was struck. She sustained two broken legs, and was several months in recovering from her injuries.

Suit was instituted by Mrs. Rosato and her husband against Daniel and his employer. Trial lasted three days.

Because the jury found both driver and pedestrian negligent, it is appropriate to note that we will consider only

those issues which bear on the finding of contributory negligence. Any error which may have been the basis of the finding of appellee's negligence is of no prejudice to appellants and therefore harmless. See, *Anderson v. Hughes*, 417 Pa. 87, 208 A.2d 789 (1965).

Appellants contend initially that it was error for the court to charge on the "dart-out" or "sudden emergency" doctrine [1] since the charge was neither requested by the parties nor justified by the evidence. Although we recognize the trial court cannot assume an advocate's function of introducing theories not raised by the parties, *Hrivnak v. Perrone*, 472 Pa. 348, 372 A.2d 730 (1977), nonetheless, we think it proper in certain instances for the court to charge on questions of law property in the case, even though not requested to do so by the litigants. *Dunn v. Calpin*, 51 Dauph. 192 (1941); *Yorkshire Worsted Mills v. National Transportation Company*, 28 Del.Co. 402 (1938). The issue in *Hrivnak*, supra, was not so much whether the court could *sua sponte* charge on an issue, but whether it could inject a theory permitting the plaintiff to recover on a ground steadfastly resisted by her throughout the trial. Such is not the case instantly, where the dart-out rule, as charged, could have favored either plaintiffs *or* defendants and was consistent with evidence and theories advanced by both. The rule was neutrally introduced by the court as follows:

> [W]hether it will apply in favor of the defendant or in favor of Mrs. Rosato will be for you to determine. But I think it's proper that you have the rule, . . . R. 259a.

Further, as it bore on either party's negligence, the charge was clearly justified by the evidence. Mrs. Rosato testified she walked "in a hurried fashion" across Richmond Avenue,

1. The sudden emergency doctrine "provides that an individual will not be held to the 'usual degree of care,' or required to exercise his or her 'best judgment' in attempting to escape from a position of peril created by [the other party's] negligence. *Amodei v. Saunders*, 374 Pa. 180, 97 A.2d 362 (1953); *Maselli v. Stephens*, 331 Pa. 491, 200 A. 590 (1938);" *Hrivnak v. Perrone*, 472 Pa. 348, 372 A.2d 730, 733 (1977).

but she did not run, and Daniel's car was suddenly upon her. R. 227a, 66a. Daniel testified, however, that he saw Mrs. Rosato "running" into the street and that he could not avoid hitting her. R. 192–195a. Such conflicting testimony created a factual dispute properly submitted to the jury. The "dart-out" charge in these circumstances did not cast the court in the role of an advocate, a posture condemned in *Hrivnak*.

Appellants next contend the investigating police officer should not have been permitted to state that, based upon his examination of the accident scene, he "could not see where there had been any speeding whatsoever." R. 215a. Officer Heard had previously testified that the skid marks from Daniel's car were 88 feet long and that he had investigated countless such accidents in his 25 years experience. It had already been established that, since there were no posted speed limits on Richmond Avenue, the limit was 55 m. p. h. Appellants' argument is essentially that Officer Heard's quoted remark was conclusory and invaded the province of the jury.

It is true that, while lay witnesses are permitted to express opinion estimates of vehicle speed in numerical terms, terms such as "fast", "slow", or "excessive" and the like are conclusory and lack evidentiary value. *Starner v. Wirth*, 440 Pa. 177, 269 A.2d 674 (1976). Further, investigating police officers are permitted to state their observations and measurements, but "grossly speculative" opinions are forbidden because of their tendency to taint the verdict. *Brodie v. Philadelphia Transportation Co.*, 415 Pa. 296, 203 A.2d 657 (1964). However, an officer may, based upon skid measurements and his expertise, state the approximate speed of a car even though he was not present at the accident. *Rutovitsky v. Magliocco*, 394 Pa. 387, 147 A.2d 153 (1959).

We think the instant, isolated remark of Officer Heard was not the type of "gross speculation" found offensive in *Brodie*, supra. Taken in context, Officer Heard's

statement was simply an indication that appellee's car was not, at the time of the accident, travelling faster than 55 m. p. h. Such a remark can hardly be said to invade the jury's realm since several other witnesses, including Daniel, testified the car's speed was approximately 40 m. p. h. and that there was much tire squealing. (R. 132–3a.; 143a; 191–2a.). Further, the court charged on the "assured clear distance" rule. See 75 Pa.C.S.A. § 3361. We think there was a wealth of testimony for the jury to consider in deciding whether Daniel drove too fast for conditions and that Officer Heard's remark was not such as to require reversal.

Appellants finally assert a number of errors in the court's charge. In reviewing each, we are mindful of our duty "not take the challenged words or passage out of the context of the whole charge, but [we] must look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party." *McCay v. Philadelphia Electric Company*, 447 Pa. 490, 499, 291 A.2d 759, 763 (1972); *Albert v. Alter*, 252 Pa.Super. 203, 381 A.2d 459 (1977).

Appellants argue the court committed error in charging the jury that its primary duty was to determine liability. Taken in context, it is clear that the jury was simply being advised that before it could assess damages for plaintiffs, it would have to find the defendants liable. Moreover, we note several occasions where the judge told the jury of its obligation to find facts. R. 236a., 246a.

Appellants contend the court erred in charging the jury on duty of care of pedestrians and motor vehicle operators between intersections. See, *Gatens v. Vrabel*, 393 Pa. 155, 142 A.2d 287 (1958) ("a pedestrian . . . who crosses a street between intersections is held to a higher degree of care than at street intersections, while the driver of a motor vehicle . . . is held to a correspondingly lesser degree of care.") Appellants do not contend that the rule was inaccurately stated, but argue it should not have

been given at all. Appellants cite those cases holding that the higher degree of care when crossing between intersections has no application if the pedestrian has been on the highway a sufficient period of time for the motorist to see him and act to avoid hitting him. *Cardiff v. Updegrave*, 409 Pa. 535, 187 A.2d 644 (1963); *Brown v. Jones*, 404 Pa. 513, 172 A.2d 831 (1961). Since Mrs. Rosato was struck just north of the center line, appellants submit that she must have been in the road for a sufficient period of time for appellee Daniel to see her and act to avoid her. See, *McNett v. Briggs*, 217 Pa.Super. 322, 272 A.2d 202 (1970). Appellants have waived this issue, however, by failing to specifically object at the close of the court's charge. At that time, appellants only stated that the court's charge was inaccurately given, R. 264–5a., and did not advance the theory sketched above, thus depriving the trial court an opportunity to address the argument. See, *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974).

■ Appellants finally submit it was error for the court to refuse their points for charge, Nos. 13, 18, and 19 all of which essentially relate to the duty of motor vehicle operators to use due care. The court instructed the jury of an operator's duty to drive in a "careful and prudent manner" (R. 239a), the duty of care between intersections (R. 240a), the assured clear distance rule (R. 248a), and the duty to drive at a reasonable rate of speed and to be vigilant at all times. (R. 241a). We think these instructions adequately encompass appellants' points for charge and it was not error to refuse their exact language.

We therefore affirm the order of the court below dismissing appellants' motion for a new trial.

Order Affirmed.

HOFFMAN, J., files a dissenting opinion.

HOFFMAN, Judge, dissenting:

Appellant here contends that it was error to instruct on the "sudden emergency" rule, not only because neither of

the parties requested the instruction, but also because the evidence did not justify the charge. I agree that there is no evidence in the record warranting this unrequested charge.

According to the defendant's testimony, R. 191a–95a, he was travelling 35 to 40 miles per hour in the westbound lane of a road 20 feet wide, which was straight at this part. About 200 feet away he saw a car facing him in the eastbound lane, parked. The car pulled away and then the defendant saw Mrs. Rosato in the middle of the eastbound lane, about 70 to 80 feet away. She was looking straight ahead and running across the road. The defendant locked his brakes, but continued to skid for the rest of the distance, and struck Mrs. Rosato when she was a foot or two in the westbound lane, which defendant's car never left.

It was error to charge the "sudden emergency" rule on these facts because there was no sudden emergency. A sudden emergency occurs only when a moving instrumentality is suddenly and unexpectedly thrust into the path of travel. *Sullivan v. Wolson*, 262 Pa.Super. 397, 396 A.2d 1230 (1978); *Brown v. Schriver*, 254 Pa.Super. 468, 386 A.2d 45 (1978). Here, defendant had an opportunity from 200 feet away to observe the plaintiff traverse ten feet of open, straightaway road into his lane, and he saw her in fact when he was still 70 to 80 feet away from her. To hold that this is a "sudden emergency" situation is an unwarranted relaxation of the standard of care demanded of motorists who see pedestrians in the road.[1]

Here the parties requested, and the lower court properly gave, an assured clear distance charge. In a given factual situation, the assured clear distance rule and sudden emergency rule are mutually exclusive. *Sullivan v. Wolson, supra,* 262 Pa.Super. at 408 n. 4, 396 A.2d at 1236 n. 4. *See also* our unanimous en banc decision in *Brown v. Schriver, supra.* In some cases, the facts may be so disputed as to require both charges, but this is not such a case. The

1. Obviously, neither did defendant's counsel think that defendant's testimony was sufficient to trigger a sudden emergency instruction, since he did not request such a charge.

defendant's own testimony disproved the existence of any sudden emergency. I am not saying that Mrs. Rosato was free of contributory negligence as a matter of law. A jury could well find negligence in running across a street without looking for oncoming traffic, if the facts were so found. However, appellant is entitled to a new trial because of the erroneous and prejudicial "sudden emergency" charge here given.