**Rodgers v. Breakiron**

*Robert Pasquale* and *Debra C. Aldrich,* for plaintiff.
*Michael J. Dunn,* for defendants Daniel A. Breakiron and Red Bird Egg Farm.
*Michael Saltzburg,* for defendant Ronald Rayne.

McGOVERN, *J.,* January 22, 1996—Plaintiff, Joseph F. Rodgers, has appealed from the denial of his post verdict motions.

Plaintiff was the driver of a vehicle traveling on Interstate 95 on June 16, 1989 when, at approximately 2:45 p.m., in the westbound, also referred to as south-

bound, three lanes, his vehicle and the two defendants' vehicles were involved in a collision. All were moving in the same direction, with plaintiff operating his 1985 Pontiac Trans Am in the far right lane, while defendant, Ronald Rayne, was driving his 1979 BMW in the center lane, and defendant, Daniel A. Breakiron, was driving his 1985 Ford Truck, owned by defendant, Red Bird Egg Farm Inc., in the far left lane of the highway. Daniel Breakiron moved into the right-hand lane, causing Ronald Rayne to veer to his right, whereupon plaintiff, attempting to avoid being struck by Rayne's vehicle, swerved onto the shoulder momentarily losing control. The plaintiff then passed Rayne and re-entered the right-hand lane traveling the same direction, at which point his vehicle was struck by the truck driven by defendant, Daniel Breakiron.

The jury returned a verdict attributing 45 percent causal negligence to the plaintiff, 45 percent to defendants, Daniel Breakiron and Red Bird Egg Farm Inc., and 10 percent to defendant, Ronald Rayne. The jury determined the total amount of harm caused by the negligence in this matter amounted to $25,000 and plaintiff's recovery was ultimately reduced to $13,750 by the court pursuant to the verdict as returned. Plaintiff, on appeal, appears to raise but two issues.[1]

## QUALIFICATIONS OF WITNESS

Plaintiff contends that it was error to allow Pennsylvania State Trooper, Corporal Francis A. Winkeler,

---

1. Plaintiff has requested the transcription of a small portion from the trial testimony which occurred November 16, 1994. Two small volumes have been received and given the same date. The court has marked those volumes Roman Numeral "I" and "II" respectively.

to give opinion testimony because he was not qualified as an accident reconstruction expert.

Although plaintiff had listed Corporal Winkeler as his own witness in a pretrial statement, at trial, he moved to preclude the trooper from giving opinion testimony concerning the speed of plaintiff's vehicle or testimony concerning reasons for the accident. Although plaintiff contends on appeal that Corporal Winkeler gave causation testimony at trial, his opinion was limited to speed and he rendered no other opinion concerning this incident. Plaintiff claims that this testimony contributed to the jury's finding of plaintiff's 45 percent negligence. Plaintiff apparently overlooks other evidence in this matter from which the jury could just as well have found the plaintiff to be negligent, regardless of speed.

Plaintiff attaches some particular significance in this case to the fact that Corporal Winkeler was not qualified in the field of accident reconstruction, but rather in the field of accident investigation. It is clear, as plaintiff's authority suggests, that where a police officer is not present at the scene of the accident, any testimony, including opinion testimony, must be founded upon discernible factors discovered as a result of investigation. *Brodie v. Philadelphia Transportation Company,* 415 Pa. 296, 203 A.2d 657 (1964); *Walker v. General Motors Corporation,* 383 Pa. Super. 400, 557 A.2d 1 (1989); *Morris v. Moss,* 290 Pa. Super. 587, 435 A.2d 184 (1981); *Anderson v. Russell,* 33 D.&C.3d 308 (1983), *aff'd,* no. 151 Harrisburg 1983, per curiam. It is clear that Corporal Winkeler rendered no opinion as to the cause of this collision, and that his testimony was limited to the issue of speed. He did not suggest that speed caused the collision.

There is no principle in Pennsylvania law that requires Corporal Winkeler under the circumstances here to be qualified in the field of accident reconstruction before he can testify concerning the issue of speed.

It is accurate, as plaintiff argues, that an investigating officer who is not an eyewitness is not competent to render an opinion as to the cause of a collision. *Brodie v. Philadelphia Transportation Co., supra; Reed v. Hutchinson,* 331 Pa. Super. 404, 409, 480 A.2d 1096, 1099 (1984). Such testimony tends to be speculative and constitutes an unwarranted usurpation of the fact finder's prerogative, thereby tainting a verdict. *Brodie v. Philadelphia Transportation Co., supra; Reed v. Hutchinson, supra,* citing *Lesher v. Henning, infra.* The witness in the case sub judice did not testify as to the cause of this accident and, therefore, law related to that issue is not helpful here.

The calculation and estimation of a vehicle's speed based upon such factors as the weight of the car, the length of the skid marks, the grade of the street, the characteristics of the road surface and other considerations have been held to be beyond the skill of an average layperson and, therefore, appropriate subjects for expert testimony. *Griffith v. Clearfield Truck Rentals Inc.,* 427 Pa. 30, 41, 233 A.2d 896, 902 (1967); *Haeberle v. Peterson,* 262 Pa. Super. 247, 396 A.2d 738 (1978); *Fady v. Danielson Construction Co.,* 224 Pa. Super. 33, 302 A.2d 405 (1973). Indeed, an investigating police officer, such as Corporal Winkeler, may, if qualified, give opinion testimony concerning the approximate speed of a car even though not an eyewitness to the incident. *McKee by McKee v. Evans,* 380 Pa. Super. 120, 551 A.2d 260 (1988); *Rosato v. Nationwide Insurance Co.,* 263 Pa. Super. 340, 397 A.2d 1238 (1979); *Rutovitsky v. Magliocco, infra.* The weight of such evi-

dence is, of course, for the jury. *Ernst v. Ace Motor Sales Inc., infra.*

Plaintiff, in the case at bar, was afforded the opportunity to extensively examine Corporal Winkeler under oath and out of the jury's presence. Plaintiff's motion to preclude was denied. Corporal Winkeler was called by the defendants, Breakiron and Red Bird Egg Farm Inc., and he testified that he had been an employee of the Pennsylvania State Police for 12 years, and at the time of this collision, seven years. He is and was a member of the Pennsylvania State Police accident investigation team. During defendants' examination attempting to qualify this witness as an expert, plaintiff offered to stipulate to Corporal Winkeler's ability to testify as an accident investigator. Defendants accepted the offer and cut short this aspect of their examination. Corporal Winkeler testified that determination of a vehicle's speed is part of what he did in accident investigations. The defendants then offered Corporal Winkeler as an expert on "the limited issue of speed as it pertains to accident investigation." (N.T. II, 20.) Plaintiff's counsel at that point responded, "I don't have any problem with him as an accident investigation expert. As part of that, I would agree that it includes speed, but I'm not sure that there is a speed expert or that there's any foundation for a speed expert." The court, in an effort to clarify, stated: "I understood him to say . . . that is, he's being qualified in the field of accident investigations, part of which includes the determination of speed." Plaintiff's counsel responded, "Yes, sir." The court inquired, "Is that a correct statement?" Defendant Breakiron's counsel replied, "that is, your honor." The court then allowed Corporal Winkeler to testify as an expert in the field of accident investigation, including the determination of speed. Plaintiff interposed no objection. Indeed, the witness later expanded upon his experience and qualifications.

Plaintiff did not cross-examine this witness concerning his qualifications.

Expert testimony is admitted at the discretion of a trial court and that decision will not be disturbed on appeal unless there has been clear error of law or an abuse of discretion. *Dambacher by Dambacher v. Mallis,* 336 Pa. Super. 22, 485 A.2d 408 (1984); *Klyman v. Southeastern Pennsylvania Transportation Authority,* 331 Pa. Super. 172, 480 A.2d 299 (1984). The trial court must make a preliminary finding that a witness has the requisite qualifications to give an opinion on the matter proposed. *Walker v. General Motors Corporation, supra.* Where a witness has any reasonable pretension to specialized knowledge on the subject under inquiry, then he may testify as an expert and give opinions within the scope of his expertise. The weight to be given such evidence is for the jury. *Kuisis v. Baldwin-Lima-Hamilton Corporation,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974); *Reed v. Hutchinson, supra* at 411, 480 A.2d at 1100; *Commonwealth v. Henry,* 524 Pa. 135, 569 A.2d 929 (1990), *cert. denied,* 111 S.Ct. 1338 (1991). The Pennsylvania Superior Court has described the standard as being, whether the witness "has sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Dambacher by Dambacher v. Mallis, supra* at 36, 485 A.2d at 415; see also, *Burch v. Sears, Roebuck and Company,* 320 Pa. Super. 444, 467 A.2d 615 (1983); *Moodie v. Westinghouse Electric Corporation,* 367 Pa. 493, 80 A.2d 734 (1951).[2] Where the basis is properly

---

2. "If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury. . . . The test applied must not set the standard of qualification so high as to exclude the

laid, a witness may be qualified to testify as an expert in the field of accident investigation. *Rutovitsky v. Magliocco,* 394 Pa. 387, 147 A.2d 153 (1959); *Morris v. Moss, supra; Lesher v. Henning, supra* at 512-13 n.2, 449 A.2d at 43 n.2; *Ernst v. Ace Motor Sales,* 550 F. Supp. 1220 (1982), *aff'd,* 720 F.2d 661 (3rd Cir. 1983).

Plaintiff insists that the trooper gave opinion testimony as to the cause of this accident. That is simply inaccurate. Therefore, whether or not the witness was qualified to render an opinion as to the cause of the collision is irrelevant to this appeal. A witness possessing Corporal Winkeler's experience and education in the field of accident investigation is qualified to attest to the speed of a motor vehicle based upon his observations and measurements taken at the scene. *Brodie v. Philadelphia Transportation Co., supra; Rutovitsky v. Magliocco, supra; Lesher v. Henning, supra; Reed v. Hutchinson, supra.* The jury was adequately instructed by the court concerning their responsibility to assess weight to expert, as well as to all, testimony. *Haeberle v. Peterson, supra.*

The plaintiff has waived his objection in this regard, in any event, by virtue of his trial stipulation to Corporal Winkeler's qualifications to testify as an expert in accident investigation, including the determination of speed. Pa.R.C.P. 227.1. Plaintiff's cross-examination at trial focused only upon what plaintiff believed was a lack of sound mathematical foundation for the opinion

only available kind of testimony ordinarily obtainable in such cases. . . . Whether the knowledge of the witness justifies the admission of his testimony is a matter for preliminary inquiry by the trial court, being largely a question within its discretion. . . . *McCullough v. Holland Furnace Co.,* 293 Pa. 45, 49." *Moodie v. Westinghouse Electric Corp., supra* at 501. (citations omitted)

rendered, as well as on the availability of other tests not conducted.

The record supports this court's qualification of Corporal Winkeler as an expert in the field of accident investigation, including estimation of a vehicle's speed. Further, it is submitted that by virtue of his trial stipulation, plaintiff has waived any right to appeal concerning this issue.

## FOUNDATIONAL EVIDENCE

Plaintiff contends that Corporal Winkeler's testimony concerning the speed of plaintiff's vehicle lacked a proper evidentiary foundation. Plaintiff argues that the corporal's calculations used "an imprecise coefficient of friction." (Plaintiff's brief in support of motions for post-trial relief, p. 11.)

Corporal Winkeler testified that the formula he used to estimate the speed of plaintiff's vehicle, which included an estimation of the coefficient of friction, was a standard commonly accepted formula.[3] There is an alternate method of arriving at the coefficient of friction and that is, by conducting a "drag" test. He testified further that such standardized coefficients of friction resulted from prior "drag tests" done upon asphalt surfaces utilizing a pull sled, skid tests done with state police motor vehicles, as well as tests conducted by Corporal Winkeler himself. These methods reflected

---

3. The significance of the figure used for the coefficient of friction is that the lower the number used for that coefficient, the lower the resulting speed will be. If one uses .08 as the coefficient of friction, the speed of the motor vehicle in question will be estimated at 62 miles per hour, with a two mile per hour margin of error above or below that speed estimate. If the coefficient of friction is 0.7, then the resultant speed would be 60 miles per hour.

the "state of the art" at the time of this collision. (N.T. I, 14-15.) Thus, it has been determined that the coefficient of friction on dry asphalt surfaces, such as is here involved, varies from between a low point in the 0.6's to as high as 0.94. Corporal Winkeler testified that when he had been asked to compare his estimated coefficients of friction in other cases with actual drag tests, the differences were minor, if any. Corporal Winkeler further testified that drag tests were used by the state police to determine the coefficient of friction for a particular vehicle only in incidents involving fatality and, therefore, he thought it unnecessary in the case sub judice.

This court concluded that Pennsylvania law does not mandate the use of a "drag sled" to compute the coefficient of friction, but rather the law requires there to be a legal foundation for the giving of the testimony, allowing the weight thereof to be left for the jury's consideration.[4]

Plaintiff also cites *Anderson v. Russell, supra,* in support of his position. There, the police witness was not qualified as an expert and the court had previously limited the witness's testimony, when the witness improperly interjected an opinion as to the point of impact. There, the court specifically found that no foundation had been laid, nor had the police officer been offered as an expert witness. *Anderson v. Russell, supra* at 312-13.

Corporal Winkeler, however, testified at trial that his estimation for the speed of plaintiff's vehicle resulted from his examination of skid and yawl tire marks made by plaintiff's vehicle at the collision scene and applying

---

4. Plaintiff did not seem to disagree at trial with the trial court's conclusion in this regard.

to them the standard formula, using the coefficient of friction as above discussed. Corporal Winkeler also interviewed the vehicle operators, including an eyewitness. Corporal Winkeler's report, produced from his accident investigation, was admitted into evidence without objection from the plaintiff. Corporal Winkeler, after all of the foregoing, estimated plaintiff's speed on Interstate 95 at the time of this incident at 64 miles per hour (allowing for the standard margins of error, Corporal Winkeler opined that plaintiff was driving between 62 and 66 miles per hour). The corporal similarly calculated the speed of the defendant, Daniel Breakiron, at 56 miles per hour.

It must again be stated that at no time during this trial was Corporal Winkeler asked to give his opinion as to the cause of this collision. There was much other evidence of factors related to causation of this collision which were presented to the jury. Speed was but one of those factors.[5] The jury may very well, however, have concluded that even were the speed of these vehicles 55 miles per hour, such may have been too fast for the conditions.

Plaintiff presents the case of *Brodie v. Philadelphia Transportation Company, supra,* as support for his position. That matter involved testimony from a state trooper that the vehicle in question was out of control and traveling too fast for conditions. That testimony went far beyond permissible estimates of speed based upon the skid marks which the appellate courts have

---

5. It is very clear from the trial of this matter that the different participants in this collision had different views of what happened, including the various paths that each of the vehicles followed immediately prior to the collision. Although those notes of testimony have not been transcribed, there is a reflection of that contained in Corporal Winkeler's testimony. (N.T. II, 38, 40-41.)

previously deemed permissible. *Rutovitsky v. Magliocco, supra; Rosato v. Nationwide Insurance Co., supra; Morris v. Moss, supra.*[6]

Plaintiff seeks support in the opinion of *Lesher v. Henning, supra* at 511-13 n.2, 449 A.2d 32-34 n.2. There, however, the police officer's opinion as to the cause of the collision was based only upon his interview with two eyewitnesses, not on any careful analysis of the physical evidence obtained at the collision scene. The opinion testimony there was also inadmissible because it was rendered before the court qualified the police officer to testify as an expert. The case is inapposite.

The record of this trial fairly supports the conclusion that Corporal Winkeler was fully qualified as an expert accident investigator, including the estimation of speed, and that plaintiff, at trial, agreed with that conclusion. Corporal Winkeler's testimony resulted from a careful analysis of evidence examined at the scene of this collision and is, therefore, admissible into evidence.

## TAINTED VERDICT

Plaintiff now argues that this verdict was tainted because the jury gave too much weight to "improper speculation testimony" from an unqualified expert police accident investigator. The gratuitous assumptions concerning the qualifications of Corporal Winkeler and the foundation for his opinion have hereinabove been

---

6. Plaintiff continues to argue that Corporal Winkeler's testimony concerning the estimated speed of these vehicles was testimony concerning causation, rather than, as logic dictates, testimony concerning a mere circumstance to be considered by the jury in determining causation. See *McKee by McKee v. Evans, supra; Ernst v. Ace Motor Sales Inc., supra.*

discussed and will not be further reviewed here. Nor is it fair to characterize this testimony as speculation since it was founded upon an investigation which was fully stated in the evidence at trial. There is, in truth, no evidence suggesting the factors or rationale of this jury in finding plaintiff 45 percent causally negligent. There is no reason to conclude that this jury did anything other than follow the court's instructions and consider all of the evidence, together with the reasonable inferences arising therefrom in reaching the verdict in this case.

Pennsylvania appellate courts have instructed that the denial of a motion for new trial, absent an error of law controlling the outcome or an abuse of discretion, where the ruling turns upon the weight of evidence in a case, will not be reversed. *United States Fidelity & Guaranty Co. v. Royer Garden Center,* 143 Pa. Commw. 31, 598 A.2d 583 (1991). The trial court's evidentiary rulings "are within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion." *Catina v. Maree,* 272 Pa. Super. 247, 258, 415 A.2d 413, 419 (1979); *Henry v. McCrudden,* 133 Pa. Commw. 231, 575 A.2d 666 (1990), *appeal denied,* 526 Pa. 651, 585 A.2d 470 (1990); *Juniata Foods Inc. v. Mifflin County Development Authority,* 87 Pa. Commw. 127, 486 A.2d 1035 (1985). Wide latitude is granted to the trial court in determining the admissibility of evidence. *Lynch v. McStome & Lincoln Plaza Associates,* 378 Pa. Super. 430, 548 A.2d 1276 (1988); *Commonwealth v. Mance,* 422 Pa. Super. 584, 619 A.2d 1378 (1993), *affirmed,* 539 Pa. 282, 652 A.2d 299 (1995); *Concorde Investments Inc. v. Gallagher,* 345 Pa. Super. 49, 497 A.2d 637 (1985).

Corporal Winkeler's opinion testimony regarding the speed of plaintiff's and defendants' motor vehicles was

founded upon a proper evidentiary base and the corporal was fully qualified as an accident investigator to give opinions concerning the speed of motor vehicles. The corporal's testimony was not an opinion as to the cause of this collision but simply an opinion as to speed which was but one of several factors to be considered when the jury decided the cause of this collision. It is respectfully suggested that the foregoing evidence was submitted according to the rules of evidence, is free from error and abuse of discretion. Therefore, the plaintiff's motion for post-trial relief was properly denied.